# JUNE TERM, 1898.*

118     1
128     153

118     1
s76NW 139
e130   ¹155

118       1'
135     ¹547

118     1
139     ¹255
118 ·     1
d142 ¹ 27

MANOR *v.* BAY CITIES CONSOLIDATED RAILWAY CO

STREET RAILWAYS—COLLISION WITH VEHICLE—CONTRIBUTORY NEGLIGENCE OF DRIVER.

Plaintiff's wife was driving, in a sparsely-settled neighborhood, a covered milk wagon, which had doors at the sides and a small window at the back. The weather was cold, and she had a shawl over her head and ears. Before crossing the track of an electric railway, upon which cars ran at half-hour intervals, she looked up and down the track, but no car was visible. She could see to the west a half mile. After crossing, she drove east, parallel with the track, but at such a distance therefrom that she thought a car could pass without hitting the wagon. The traveled portion of the roadway was narrow, and she guided the horse so that the wheels of the wagon would follow in the ruts. After driving about 300 feet, she heard a bell, and attempted to turn out farther, but, before she could do so, an east-bound car struck the wagon. *Held,* in an action against the company, not to show contributory negligence as a matter of law.[1]

2. SAME—INSTRUCTIONS.

In view of the facts of the particular case, it was not reversible error for the court to charge that "she had a right to drive down the track just as she did, and if she turned out, or tried to turn out, immediately on the sounding of the gong, she was blameless, and there is no contributory negligence in the case;" and that "a man may drive ahead of you with a wagon, * * * but * * * you must wait until your opportunity comes to pass, and the same rule applies to a street car,"— further instructions making it clear to the jury that the question of contributory negligence was for their determination, and that if they should find 'that she drove in front of the car after she had turned out (as claimed by

---

* Continued from Vol. 117.

[1] The authorities on liability for injuries by street-car collisions with vehicles or horses are collated in a note to *Hicks* v. *Citizens' R. Co.*, (Mo.) 25 L. R. A. 508.

the company), and it was then so near to her that it could not be stopped, they should return a verdict of no cause of action.

Error to Bay; Maxwell, J. Submitted June 10, 1898. Decided July 18, 1898.

Case by Napoleon Manor against the Bay Cities Consolidated Railway Company for negligent injuries. From a judgment for plaintiff, defendant brings error. Affirmed.

*T. A. E. & J. C. Weadock*, for appellant.

*H. M. Ready* (*Simonson, Gillett & Courtright*, of counsel), for appellee.

MOORE, J. This is one of two cases, both by agreement tried as one, growing out of a collision between an electric car belonging to defendant, and a milk wagon in charge of the wife of plaintiff. A judgment was recovered of $81, from which defendant appeals.

Defendant's road is an electric road. The wife of the plaintiff was driving a milk wagon in the village of Essexville. She had occasion to cross the track from the south. She was riding in a covered wagon, which had doors at the sides, and a small glass window at the back. The weather was cold, and she had her shawl over her head and ears. According to her testimony, before crossing the track, she stopped the wagon, opened the doors, and looked both ways. She could see to the west a half mile. She saw no car, and crossed the track, and turned to the east, on the north side of the track, and parallel with it. The street on the south side of the track was sandy and soft, and for that reason was not traveled to any extent. On the north side of the track, for about nine feet from the track, it was macadamized with broken stone, which was worn smooth only in two narrow parallel tracks, where the wheels of vehicles ran. Mrs. Manor drove her horse so the wheels of the wagon would follow in these

beaten portions of the road. She was familiar with this street, having driven on it frequently. She says she supposed she was driving far enough away from the track so that a car coming from the west could pass her without hitting the wagon. There were two cars run over this line. They passed at intervals of one-half hour each. Mrs. Manor says she looked west as she crossed the track, and saw no car. She had driven east about 300 feet when she heard a bell, and instantly attempted to guide her horse away from the track, when at once her wagon was struck by the car which had overtaken her, and the injury was done.

When the testimony of the plaintiff was all in, the court was asked to direct a verdict for the defendant, upon the ground that plaintiff was guilty of contributory negligence. The court refused to do so, and this is said to be error. We cannot agree with counsel in this claim. It is true, the defendant must run its cars upon the rails, and cannot turn out upon the street; but it has no exclusive right to the use of the street. The plaintiff also had a right to drive her vehicle in the beaten portion of the road, and to act as a reasonable and prudent person would under like conditions. She might dress against the inclemency of the weather. The motorman could see her vehicle for a half mile. He had notice of its proximity to the track, and of the danger to it if he let his heavy car run against it. It is true, he says in his testimony that he rang his gong, and saw Mrs. Manor turn away from the track, and he supposed he could pass her safely, when she turned back into the dangerous position again, and was hit. Testimony was offered supporting and rebutting the testimony of the motorman; but it is perfectly evident from the record that but a moment's delay and a little more care on the part of the motorman would have avoided the injury. When the motion was made, the defense had not introduced any testimony, and we do not think it could be said as a matter of law that, under the facts then disclosed by the record, the defendant was excused from any liability because of the injury.

After this motion was overruled, defendant put in testimony which, if believed by the jury, made a complete defense. Testimony was introduced to rebut this defense. The case was submitted to the jury in a charge which is claimed by defendant to be erroneous. The record does not disclose that any written requests were preferred by counsel for defendant. So much of the charge as counsel think necessary for the purpose of making their point is cited in the brief. If more of the charge had been quoted, it would have modified what was quoted. So far as it is necessary to quote, the language used by the circuit judge was as follows:

"Now, gentlemen, the view I take of this testimony narrows the points for your consideration down to two propositions. The woman has given her testimony as to crossing the track, and driving along down beside it. There is no evidence in the case that the thoroughfare was crowded, or that there was any occasion for unusual caution on anybody's part in the matter. She had a right to cross the railroad, and she had a right to drive down the track, just exactly as she did; and if she turned out, or tried to turn out, immediately on the sounding of the gong, she was blameless; there is no contributory negligence in the case. But if, instead of turning out, and getting out of the way, or attempting to, she turned out in part, and turned around and tried to get back to that position, as testified to by some of the witnesses, and that was the reason why the accident happened, she cannot recover in either case; neither can recover a penny. You have heard the testimony upon that branch of the case, and you will judge of it just exactly—You know it just as well as I do; and it is your province and your duty to determine what the facts were about it. That place there was a common street or highway. Both the railroad company and she had a right there, and when one overtakes another— A man might drive ahead of you with a wagon, and you might be so crowded or loaded that you could not get by him; but you cannot have your horses jam onto his wagon; you must wait until your opportunity comes to pass. The same rule applies to a railroad company. The manager of that car must not be guilty of negligence or carelessness. He had a right to run up to the wagon. He must slow down and get con-

trol of his car more effectually even than the counsel has stated to you here, so that the control is approximately absolute. A street car and a locomotive are tremendous agencies. They are necessary for the good of society, but they are very dangerous; and while the defendant is innocent if merely running its car and managing it as well as it can, or as a prudent, careful, competent man can manage it, it can do all that and be blameless, and no court or jury has any right to find any damage against it for such conduct. But if this statement was that the woman was trying to get away from the car, and he could have stopped it, and prevented the accident, he was bound to do it. Hence, if that is all there is of the case, your inquiry on the merits of the case perhaps might as well end there. But if, going further, you think that she tried to drive in front of the car after she turned out, and it was so near to her that the men could not have stopped, and that that caused or contributed to cause the accident, you will find no cause of action. A great deal of law argument has been had, and law submitted, to the effect that the plaintiff in this case was guilty of contributory negligence in driving along down the street as she did. I don't think there was any negligence in doing so until she heard the bell from the car; but that is a matter for you to determine."

In determining whether this charge is error, we must take the facts disclosed by the record into consideration. This accident did not occur in a crowded street, or in a thickly-populated neighborhood, or in an attempt to cross the track. Mrs. Manor was familiar with her surroundings. She knew when she crossed the track there was no car in sight, and that she would be in sight of the motorman approaching behind her for more than a half mile. She also knew the cars ran only once each half hour. The portion of the roadway which was macadamized and used by the public was comparatively narrow. She was driving in the usually traveled portion of it, at a distance which she thought was far enough away so she would be safe. It was not unreasonable for her to expect that a car overtaking her would not run into her vehicle without first giving her such notice as would enable her to get out of the way. While it doubtless would have been better

for the court to abstain from expressing any opinion as to the negligence of Mrs. Manor, he told the jury it was a question for their determination.   He reviewed briefly the claims of the parties, and told the jury, if the facts were as sworn to by the motorman and the witnesses for the defendant, plaintiff could not recover.   In *Laethem* v. *Railway Co.*, 100 Mich. 297, it is held, when the driver of a street car sees that a sleigh is standing so near to the car track as to make the striking of it certain unless it is removed, he is bound, if able to do so, to stop his car, if he sees the driver of the sleigh is unable to move soon enough to avoid the accident.   See *Montgomery* v. *Railway Co.*, 103 Mich. 46 (29 L. R. A. 287 ).   In the case of *La Pontney* v. *Shedden Cartage Co.*, 116 Mich. 514, in speaking of the duty of a motorman towards the driver of a vehicle loaded with a merry-go-round, Justice MONTGOMERY used this language:   " It was the duty of plaintiff to have the car under such control as to admit of its being stopped after he became able to discern objects on the track, and before a collision with such objects should occur,"—citing a number of cases.   See, also, *Goldrick* v. *Railroad Co.*, ( R. I.) 37 Atl. 635, 2 Am. Neg. Rep. 647.   Taking the charge as an entirety in connection with the facts shown by the record, reversible error is not shown.

The judgment is affirmed.

The other Justices concurred.