## ROBARDS v. INDIANAPOLIS STREET RAILWAY COMPANY.

[No. 4,319.    Filed January 28, 1903.    Rehearing denied June 5, 1903.    Transfer denied January 26, 1904.]

STREET RAILROADS.—*Collision with Cyclist.—Contributory Negligence.*—Plaintiff, who was riding a bicycle near a street car track, was overtaken by a street car, and was knocked from his bicycle and injured. Plaintiff was going from five to six miles an hour. There was nothing to prevent plaintiff from riding further from the track except the roughness of the street. He could have seen the approaching car if he had looked behind him, but for a distance of 300 feet he had failed so to look, and did not know of the approaching car. At a distance of 300 feet plaintiff could have heard the car if he had listened. The motorman in charge of the car saw plaintiff and had reason to believe that unless he slackened the speed of his car, or gave plaintiff warning that the car was liable to come in contact with plaintiff, but failed to slacken the speed of his car or sound the gong. *Held*, that plaintiff was guilty of contributory negligence, and could not recover. Roby and Black, JJ., dissent.

From Marion Circuit Court (10,722); *H. C. Allen*, Judge.

Action by Ezra E. Robards against the Indianapolis Street Railway Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*R. W. McBride* and *C. S. Denny*, for appellant.

*F. Winter*, *C. Winter* and *W. H. Latta*, for appellee.

Robards *v.* Indianapolis St. R. Co.

COMSTOCK, J.—Appellant brought this action against appellee to recover damages for personal injuries alleged to have been occasioned by appellee's negligence. The complaint consists of two paragraphs. The first charges negligence, the second, wilfullness upon the part of appellee's servants. The jury returned a verdict in favor of appellant upon the first paragraph, assessing his damages at $700. With the general verdict answers to interrogatories were returned. Upon motion the court rendered judgment in favor of appellee on these answers, notwithstanding the general verdict, and judgment against appellant for costs. The assignment of errors questions these rulings. The first paragraph avers that appellant was, at the time he received the injury complained of, riding a bicycle on Illinois street, in the city of Indianapolis, when he was run into by one of appellee's electric cars. No question is presented on the complaint, and a further statement of its averments is unnecessary.

In sustaining appellee's motion for judgment, the trial court decided that there was an irreconcilable conflict between the general verdict and the answers to interrogatories. The answers show that the plaintiff was struck by one of defendant's electric cars, and thrown to the pavement, while riding a bicycle along the outside and near to the track of the defendant company on North Illinois street, near Market street, in Indianapolis. The motorman in charge of said car saw the plaintiff near to the said track on which said car was running in time to have stopped said car before overtaking plaintiff, but made no effort to stop it. No alarm or warning of the approach of said car just prior to the collision was given. Plaintiff did not know that said car was approaching him before it struck him. The car was going south, and the plaintiff was also going south when he was struck. Said motorman had reason to believe, after he saw plaintiff on his bicycle near the outer rail of said car track, and before the collision, that the car

was liable to come in contact with plaintiff, or the bicycle on which he was riding, unless he slackened the speed of said car, or gave the plaintiff warning of its approach. The motorman knew for some time before the collision that the plaintiff's body, as he was riding near said track, projected far enough over to the east to come in contact with the end or side of the said car, if he, said motorman, should continue the movement of said car, and plaintiff should continue on his way the same distance from said track until said car should overtake him.   On December 10, the day appellant was injured, Illinois street, in the city of Indianapolis, was about sixty feet wide from curb to curb, extending both north and south from Market street in a straight line for many squares.   The entire roadway of said street was paved with asphalt from curb to curb, and open and in use for general travel.   In said street there were two street railway tracks laid even with the surface of the street, each about four feet eight and one-half inches from rail to rail, and so placed as to be equally distant from the center line of the street, and about five feet apart.   The cars going south on Illinois street use the west track, and those going north the east track, and all of said cars projected over the rails of the track upon which they ran about ten or twelve inches on each side.

At the time of his accident plaintiff was a man thirty years of age, fully possessed of the faculties of hearing and seeing, and having ordinary mental attainments, judgment, and physical strength.   He was familiar with Illinois street at the place of his accident, and the location of car tracks therein, and the manner in, and the frequency with which cars were operated thereon.   At said time there were three separate car lines, the cars of which used the tracks on said Illinois street for at least one square in both directions from Market street; and there were cars passing along the tracks at that place very frequently, and at irregular intervals.   The plaintiff had been riding along by

the west rail of the west track about three hundred feet, and so close to it (about twelve or fifteen inches) that a car could not pass on that track without striking him, before he reached the place of the accident. His left shoulder was eight or ten inches from the west rail. During all of the time he was in full control of his bicycle, and in full possession of all of his faculties and physical powers. While he rode beside the street car track he was riding at the speed of four or five miles an hour, and the car was running at ten or twelve miles an hour during the time appellant was riding beside the west rail. There was no obstruction to the view between the plaintiff and the car at any time while plaintiff was riding beside the track. He was about three hundred feet from the place of the accident when he last looked toward the north to see if any car was approaching. He did not see the car with which he afterward collided when he so looked. There was not at any time after the plaintiff began to ride beside the said rail anything but roughness of street to prevent him from turning away from said rail at any time if he had so wished to do. If plaintiff had, at any time while riding beside the track, turned to his right, away from the track, about four feet, he would have gotten out of danger of any car which might run on that track. He could without any danger to himself, but only with some inconvenience, because of the roughness of the roadway of the street, have turned off to his right, into the roadway, at any time or place while and where he was riding beside the track. The southwest corner of the car going south came in contact with plaintiff or his bicycle. The noise made by the ordinary operation of the car at the time of and just before the plaintiff's accident could have been heard by the plaintiff, if he had listened for it, three hundred feet. The jury also answered that there was no evidence as to the following facts about which they were interrogated, viz.: That the motorman knew that his car had struck appellee at the time of the collision; whether

there were other vehicles or pedestrians in the west roadway of Illinois street, near the plaintiff, when he was struck; within what distance the car could have been stopped when it approached the place where plaintiff was struck; as to what plaintiff did as he rode beside the track to indicate that he could not or would not, when it became necessary to do so, turn away from the track to avoid the car.

We have given the facts specially found. Upon them it does not seem necessary to comment at any length. They foreclose discussion as to the contributory negligence of the appellant. His conduct showed a singular indifference to his own safety. He needlessly exposed himself to danger he had good reason to believe was imminent. He used neither his sense of sight nor hearing, when the use of either would have enabled him to have avoided his injury. That this was negligence we need cite no authorities. The general verdict finds that he was free from contributory negligence. The facts show affirmatively that he did not exercise ordinary care. The conflict was irreconcilable, and the court properly rendered judgment in favor of appellee.

Judgment affirmed.


## On Petition for Rehearing.

Comstock, P. J.—The rule is universal, in cases in which the injured party seeks to recover damages for personal injuries occasioned by the negligence of another, that the complaining party can not recover if it affirmatively appears that he was guilty of contributory negligence. He must show some care to avoid the injury. He must, at least, use his nautral senses. The traveler must not only do all that an ordinarily prudent man would do under like circumstances, but all that the law declares that an ordinarily prudent person should do. The law measures the duty. A prudent man may do what the law forbids, or he

may omit to do that which the law enjoins, nevertheless the doing of the one and the omission of the other is negligence. The most prudent men are not always exempt from carelessness, and when actually negligent, the law attaches the same consequences to their conduct as to similar conduct in others. *Cincinnati, etc., R. Co.* v. *Grames*, 8 Ind. App. 112.

In numerous cases it has been held that the plaintiff's conduct is not contributory negligence, if, notwithstanding his negligence, the injury could have been avoided by the use of ordinary care by the defendant. That rule prevails when the plaintiff is in a position of threatened contact with some agency under the control of the defendant, when the plaintiff can not, and the defendant can, prevent the injury. It does not apply where both parties are contemporaneously and actively in fault, and by their mutual carelessness an injury ensues to one or both of them. *Everett* v. *Los Angeles, etc., R. Co.,* 115 Cal. 105, 115, 46 Pac. 889, 34 L. R. A. 350. The rule does not apply, where, as in the case before us, the negligence of the party injured continues up to the moment of the injury, and was a contributing cause thereof. Appellant was not riding in a noisy or unwieldy vehicle drawn by horses, but on a swift and noiseless bicycle, susceptible, by slight pressure of the hand, of being instantly turned aside so as to avoid contact with the car. Had he looked or listened he would have known of its approach, and could have put himself out of danger up to the instant of his injury.

The petition for rehearing is overruled.

Robinson, C. J., Wiley and Henley, JJ., concur. Roby and Black, JJ., dissent.

## DISSENTING OPINION.

Roby, J.—Action by appellant against appellee for personal injuries alleged to have been occasioned by appellee's negligence. General verdict for $700 for appellant upon the first paragraph of complaint. With the general verdict the jury returned answers to interrogatories. Appellee's motion for judgment upon the answers to interrogatories notwithstanding the general verdict sustained, and exception. Judgment for appellee. Error is assigned that the court erred in sustaining the motion for judgment upon the answers to interrogatories notwithstanding the general verdict.

The material averments of the paragraph are, in substance, that, at the time of the alleged injury, appellee maintained and operated a double-track street railway line upon Illinois street, in Indianapolis; that appellant was traveling along said street on a bicycle, going south, riding on the outside of the west track near the outer rail; that appellee's car was also traveling south behind appellant, at the time of the collision; that appellant had been in full view of the motorman in charge of said car for some time prior to the infliction of the injuries, and had been riding in a direct south line near said outer rail for many rods in full view of the motorman; that notwithstanding said facts the motorman negligently and without regard to appellant's rights ran the car at great speed during all said time and distance without giving appellant any warning of the car's approach until it struck him; "that said motorman could easily have warned plaintiff of the approach of said car by sounding his gong, or by giving other alarms, so as to have prevented said collision, and could also have checked and slackened the speed of said car after the danger of collision became apparent to him, and could have avoided the infliction of said injuries; but plaintiff avers that said motorman did not give any alarm whatever, and did not check or

slacken the speed of said car after the aforesaid danger became apparent to him."

The answers to interrogatories show, in substance, the following facts: On the day appellant was injured, Illinois street was about sixty feet wide from curb to curb, extending north and south from Market street in a straight line for many squares. The entire roadway of said street was paved with asphalt from curb to curb, and open and in use for general travel. In said street there were two street railway tracks laid even with the surface of the street, each about four feet eight and one-half inches from rail to rail, and so placed as to be equally distant from the center line of the street, and about five feet apart. The cars going south on Illinois street use the west track, and those going north the east track, and all of said cars projected over the rails of the track upon which they ran about ten or twelve inches on each side. At the time of the accident plaintiff was a man thirty years of age, fully possessed of the faculties of hearing and seeing, and having ordinary mental attainments, judgment, and physical strength. He was familiar with Illinois street at the place of the accident, and the location of the car tracks therein, and the manner and frequency with which cars were operated thereon. At the time there were three separate car lines, the cars of which used the tracks on Illinois street for at least one square in both directions from Market street, and there were cars passing along the tracks at that place very frequently and at irregular intervals. The plaintiff had been riding along by the west rail of the west track about three hundred feet, and so close to it (about twelve or fifteen inches) that a car could not pass on that track without striking him. His left shoulder was eight or ten inches from the west rail. During all the time he was in full control of his bicycle, and in full possession of all his faculties and physical powers. While he rode beside the street car track he was riding at a speed of four or five miles an hour, and the car

was running ten or twelve miles an hour, and was running at that speed when it struck the plaintiff. There was no obstruction to the view between the plaintiff and the car at any time while plaintiff was riding beside the track. He was about three hundred feet from the place of the accident when he last looked toward the north to see if any car was approaching. He did not see the car with which he afterwards collided when he so looked. Plaintiff was struck by one of defendant's south-bound electric cars, and thrown to the pavement, while riding a bicycle along the outside and near, the track of the defendant company on North Illinois street, near Market street. The motorman in charge of said car saw the plaintiff near said track on which said car was running in time to have stopped said car before overtaking plaintiff, but made no effort to stop it. No gong or other alarm or warning of the approach of said car just prior to the collision was given. Plaintiff did not know that said car was approaching him before it struck him. The car and the plaintiff were both going south when the plaintiff was struck. The motorman had reason to believe, after he saw plaintiff on his bicycle, near the outer rail of said car track, and before the collision, that the car was liable to come in contact with the plaintiff, or the bicycle on which he was riding, unless he slackened the speed of the car, or gave the plaintiff warning of its approach. The motorman knew for some time before the collision that the plaintiff's body, as he was riding near said track, projected far enough over to the east to come in contact with the end or side of the said car if he (the motorman) should continue the movement of said car, and plaintiff should continue on his way the same distance from the track, until said car should overtake him. There was not at any time after the plaintiff began to ride beside the said rail anything but roughness of street to prevent him from turning away from said rail at any time if he

had so wished to do. If plaintiff had at any time, while riding beside the track, turned to his right, away from the track, about four feet, he would have gotten out of danger of any car which might run on that track. He could, without any danger to himself, but only with some inconvenience, because of the roughness of the roadway of the street, have turned off to his right, into the roadway, at any time or place while and where he was riding beside the track. The southwest corner of the car going south came in contact with the plaintiff on his bicycle. The noise made by the ordinary operation of the car, at the time of and just before the plaintiff's accident, could have been heard by the plaintiff, if he had listened for it, three hundred feet. The jury also answered that there was no evidence as to the following facts, about which they were interrogated, viz.: That the motorman knew that his car had struck the appellant at the time of the collision; whether there were other vehicles or pedestrians in the west roadway of Illinois street, near the plaintiff, when he was struck; within what distance the car could have been stopped when it approached the place where plaintiff was struck; as to what plaintiff did, as he rode beside the track, to indicate that he could not or would not, when it became necessary to do so, turn away from the track to avoid the car.

The effect of the general verdict is to establish the facts averred in the complaint. It must therefore be taken as true that the motorman could have checked and slackened the speed of the car after the danger of collision became apparent to him, and could have avoided the infliction of said injuries, and that he did not give any alarm whatever, and did not check or slacken the speed of his car after appellant's danger became apparent to him. The answers to interrogatories upon the points indicated are in accord with the general verdict.

In the case of *Bedell* v. *Detroit, etc., Railway* (Mich.), 92 N. W. 349, decided by the supreme court of Michigan,

the jury were instructed, in part, as follows: "The case here is not one arising upon a street crossing, which has been a very fruitful source of litigation, but the situation is one where the decedent was riding upon his wheel in the public highway, close beside the defendant's railway, and was overtaken and killed by a car coming from behind. It is sometimes said, very correctly, that, if one discovers another to have been negligent, he must take precautions accordingly, omitting which, he is liable to the other for the damages which follow from his own want of care, for, however related the separate negligences may be, the one can not bar an action for the other, unless it be contributory; and, though an unseen position might contribute to an accident, a discovered one can not. The decedent, Mr. Bedell, was not a trespasser upon the street car tracks in any sense. The right of the street railway in the street is only to use it in common with the public. It has no exclusive right of travel, even upon its track, and it is bound to use the same care in preventing a collision as the driver of a wagon, or any person crossing or entering upon the highway. Street cars have precedence, necessarily, in the portion of the way designated for their use. This superior right must be exercised, however, with proper caution, and a due regard for the rights of others; and the fact that it has a prescribed route does not alter the duty of the defendant railway company to the public, who have the right to travel upon its track until they are overtaken by its cars. In this case there is no dispute but that the motorman saw the decedent, Mr. Bedell, for some time and for a considerable distance before he overtook and struck him with the car. .It is undisputed that the motorman saw the decedent riding upon his wheel along a path in very close proximity to the track of the railway company. It is in dispute, however, whether the bell or gong was rung by the motorman. The motorman himself testifies that the decedent gave no indication that he heard the bell or gong of the rapidly

approaching car until it was too late to escape disaster. Applying some of these principles to the facts in this case, I instruct you that: * * * In other words, you are to determine from the evidence whether or not the plaintiff has shown by a fair preponderance of the evidence that under the facts and circumstances known and apparent to the motorman, and in view of the situation as it appeared to him, this car was run at a high and dangerous rate of speed, with reckless and wanton disregard of consequences, and whether or not this accident was caused thereby." The instruction was approved as a correct statement of the law applicable to the facts. *Bedell* v. *Detroit, etc., Railway, supra; Montgomery* v. *Lansing, etc., R. Co.,* 103 Mich. 46, 60, 61 N. W. 543, 29 L. R. A. 287; *Citizens St. Railway* v. *Steen,* 42 Ark. 321; *Tunison* v. *Weadock* (Mich.), 89 N. W. 703; *Shaw* v. *Salt Lake City R. Co.,* 21 Utah 76, 59 Pac. 552.

"If the motorman, when he saw appellant on the track, had reason to believe that he was unconscious of the danger or unable to avoid it, it was his duty to use every reasonable effort to stop the car and arouse the attention of appellant." *DeLon* v. *Kokomo City St. R. Co.,* 22 Ind. App. 377; *Goldrick* v. *Union R. Co.,* 20 R. I. 128, 37 Atl. 635.

Judge Mitchell, in that accurate form of expression, of which he was master, states the law applicable to this case as follows: "We quite agree that if the driver of the express wagon saw the appellant standing in the street, it was his duty to turn out and not drive his wagon upon him, and if the facts presented a case in which it appeared that the driver, after seeing the appellant, had any reasonable ground to apprehend that he was not aware of the approaching wagon, and was unconscious of the danger that was imminent, a recovery would have been justified notwithstanding the antecedent negligence of the appellant." *Evans* v. *Adams Express Co.,* 122 Ind. 362, 366, 7 L. R. A.

678; *Evansville, etc., R. Co.* v. *Hiatt,* 17 Ind. 102, 105; *Krenzer* v. *Pittsburgh, etc., R. Co.,* 151 Ind. 587, 592, 68 Am. St. 252; *Summit Coal Co.* v. *Shaw,* 16 Ind. App. 9; *Cleveland, etc., R. Co.* v. *Klee,* 154 Ind. 430, 434; *Citizens St. R. Co.* v. *Hamer,* 29 Ind. App. 426.

It can not be held, as a matter of law, that a person traveling upon a street along which a street car track is laid is bound constantly to look backward when driving upon or in close proximity to such track. He has a right to assume, and to act upon the assumption, that warning will be given by those in charge of the approaching car behind him, and that the motorman will not knowingly or negligently run him down. *Rooks* v. *Hauston, etc., R. Co.,* 41 N. Y. Supp. 824; *Tunison* v. *Weadock, supra; Montgomery* v. *Lansing, etc., R. Co., supra; Rouse* v. *Detroit Electric Railway,* 128 Mich. 149, 87 N. W. 68; *Stringer* v. *Frost,* 116 Ind. 477, 9 Am. St. 875; *Scofield* v. *Myers,* 27 Ind. App. 375.

The principles governing the conduct of persons using public highways are not affected by the character of the vehicle or the name of the individual. They are no different when invoked to govern the conduct of persons operating street cars, automobiles, and bicycles than when applied to the regulation of those otherwise using the street. The idea that appellant was guilty of negligence in riding a bicycle upon the city street at the side of or between the car tracks is unfounded. He had exactly the same right to use it that appellee had. The street car does have a preferential right to the use of that portion of the street covered by its tracks arising from the reasonable necessity of its operation; running in a fixed course it can not be turned to the right, and hence the law of the road, applicable to other vehicles, does not apply to it. It can not pass around obstructions on its tracks; hence others using the street must stand aside and permit it passage. This preferential, or, as it is sometimes less accurately called, superior right, does not relieve the

operator of the car from obligations imposed upon those using the highway. Generally stated all such persons are bound to use ordinary and reasonable care under the particular conditions and circumstances existing to avoid injuring others and to escape injury themselves, and they have a right to expect like care from others. On the public highways, as in the courts of the land, men meet on exactly equal terms.

The main opinion does not state accurately the issue made by the complaint. If the conclusion reached is based upon any proposition of law, I have been unable to discover what it is.

A review of the authorities governing the case at bar would unduly extend this opinion. The following decisions by various courts of various states cover the case most thoroughly, and are in accord with the principles heretofore expressed by the courts of Indiana. *Vincent v. Norton, etc., St. R. Co.,* 180 Mass. 104, 61 N. E. 822; *Fenner v. Wilkes-Barre, etc., Traction Co.,* 202 Pa. St. 365, 51 Atl. 1034; *Consumers, etc., St. R. Co. v. Pryor* (Fla.), 32 South. 797; *Manor v. Bay Cities, etc., R. Co.,* 118 Mich. 1, 76 N. W. 139; *Shilling v. Metropolitan St. R. Co.,* 62 N. Y. Supp. 403; *Shea v. Potrero, etc., R. Co.,* 44 Cal. 414; *Mahoney v. San Francisco, etc., R. Co.,* 110 Cal. 471, 475, 42 Pac. 968; *Robinson v. Louisville R. Co.,* 112 Fed. 484, 50 C. C. A. 357; *Tashjian v. Worcester, etc., St. R. Co.,* 177 Mass. 75, 81, 58 N. E. 281; *Tacoma R., etc., Co. v. Hays,* 110 Fed. 496, 49 C. C. A. 115; *Hall v. Ogden City St. R. Co.,* 13 Utah 243, 253, 44 Pac. 1046, 57 Am. St. 726; *Saunders v. City, etc., R. Co.,* 99 Tenn. 130, 134, 41 S. W. 1031; *Citizens Rapid Transit Co. v. Scigrist,* 96 Tenn. 119, 33 S. W. 920; *Woodland v. North Jersey St. R. Co.,* 66 N. J. L. 455, 49 Atl. 479; *Shea v. St. Paul City R. Co.,* 50 Minn. 395, 52 N. W. 902; *Lacthem v. Ft. Wayne, etc., R. Co.,* 100 Mich. 297, 58 N. W. 996; *Citizens St. Railway v. Steen,* 42 Ark. 321; *Shaw v. Salt Lake*

*City St. R. Co.,* 21 Utah 76, 59 Pac. 552; *McClellan* v. *Ft. Wayne, etc., R. Co.,* 105 Mich. 101, 62 N. W. 1025.

The petition for a rehearing should be granted.